Thomas P. Riley
Law Offices of Thomas P. Riley, P.C.
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227
CA SBN No. 194706
Fax: 626-799-9795
TPRLAW@att.net
Tel:  626-799-9797

Attorneys for Plaintiff
Innovative Sports Management, Inc.,
d/b/a Integrated Sports Media

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| Innovative Sports Management, Inc., d/b/a Integrated Sports Media, | Case No.: |
| Plaintiff, | COMPLAINT |
| vs. | |
| Cimar Scaff and Rick Silva, individually and d/b/a Silva's Brazilian Bar & Grill; and Objective Enterprises, an unknown business entity d/b/a Silva's Brazilian Bar & Grill, | |
| Defendants. | |

**PLAINTIFF ALLEGES:**

## **JURISDICTION**

1.      Jurisdiction is founded on the existence of a question arising under particular

statutes. This action is brought pursuant to several federal statutes, including the Communications Act of 1934, as amended, Title 47 U.S.C. 605, *et seq.,* and The Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S.C. Section 553, *et seq,* and California B&P Section 17200, a California state statute.

2.      This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. Section 1331, which states that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties, of the United States. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

3.      This Court has personal jurisdiction over the parties in this action as a result of the Defendants' wrongful acts hereinafter complained of which violated the Plaintiff's rights as the exclusive commercial domestic distributor of the televised *Programs* hereinafter set forth at length. The Defendants' wrongful acts consisted of the interception, reception, publication, divulgence, display, exhibition, and tortious conversion of said property of Plaintiff within the control of the Plaintiff in the State of California constituting an unfair business practice in violation of the law, including specific California state statutes, more particularly set forth below.

///

## VENUE

4.      Pursuant to Title 47 U.S.C. Section 605, venue is proper in the Central District of California, because a substantial part of the events or omissions giving rise to the claim occurred in this District and/or because, *inter alia,* all Defendants reside within the State of California (28 U.S.C. § 1391(b) and 28 U.S.C. § 84(c)(3)).

## INTRADISTRICT ASSIGNMENT

5.      Assignment to the Southern Division of the Central District of California is proper because a substantial part of the events or omissions giving rise to the claim occurred in Orange County and/or, the United States District Court for the Central District of California has decided that suits of this nature, and each of them, are to be heard by the Courts in this particular Division.

## THE PARTIES

6.      Plaintiff, Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is, and at all relevant times mentioned was, a New Jersey corporation with its principal place of business located at 64 North Summit St., Suite 218, Tenafly, NJ 07060.

7.      Plaintiff is informed and believes, and alleges thereon that, at all times relevant hereto, Defendant Objective Enterprises is an owner, and/or operator, and/or licensee, and/or permittee, and/or entity in possession, and/or an entity with dominion, control,

oversight and management of the commercial establishment doing business as Silva's Brazilian Bar & Grill operating at 3672 S. Bristol Street, Santa Ana, CA 92704.

8.    At all times relevant hereto, including on Thursday, March 24, 2022, Defendant Objective Enterprises was the licensee and primary owner of the commercial establishment doing business as Silva's Brazilian Bar & Grill operating at 3672 Bristol St., Santa Ana, CA 91704 specifically identified on the California Department of Alcoholic Beverage Control License (ABC #593641).

9.    At all times relevant hereto, including on Thursday, March 24, 2022, Defendant Cimar Scaff was specifically identified as President/Secretary/Chief Executive Officer, officer and stockholder on the California Department of Alcoholic Beverage Control License (ABC #593641) issued to Objective Enterprises for Silva's Brazilian Bar & Grill.

10.    At all times relevant hereto, including on Thursday, March 24, 2022, Defendant Cimar Scaff was specifically identified as Chief Executive Officer and director/officer on the State of California Secretary of State Statement of Information (C3899202) issued to Objective Enterprises.

11.    At all times relevant hereto, including on Thursday, March 24, 2022, Defendant Rick Silva was specifically identified as Chief Financial Officer and director/officer on the State of California Secretary of State Statement of Information (C3899202) issued to Objective Enterprises.

12.    Plaintiff is informed and believes, and alleges thereon that on Thursday, March 24, 2022 (the date of the four soccer match *Programs* at issue herein, as more specifically defined in Paragraphs 21, 54, 87, and 120), Defendants Cimar Scaff and Rick Silva had the right and ability to supervise the activities of Silva's Brazilian Bar & Grill, which included the unlawful interception, receipt, and publication of Plaintiff's *Program.*

13.    Plaintiff is informed and believes, and alleges thereon that on Thursday, March 24, 2022 (the date of the four soccer match *Programs* at issue herein, as more specifically defined in Paragraphs 21, 54, 87, and 120), Defendant Cimar Scaff and Rick Silva, as individuals had the obligation to supervise the activities of Objective Enterprises, which included the unlawful interception, receipt, and publication of Plaintiff's *Program,* and, among other responsibilities, had the obligation to ensure that Silva's Brazilian Bar & Grill operated lawfully at all times.

14.    Plaintiff is informed and believes, and alleges thereon that on Thursday, March 24, 2022, (the date of the four soccer match *Programs* at issue herein, as more specifically defined in Paragraphs 21, 54, 87, and 120), Defendants Cimar Scaff and Rick Silva specifically directed or permitted the employees of Silva's Brazilian Bar & Grill  to unlawfully intercept, receive, and publish Plaintiff's *Programs* at Silva's Brazilian Bar & Grill, or intentionally intercepted, received, and published the *Programs* at Silva's Brazilian Bar & Grill themselves. The actions of the employees of Silva's Brazilian Bar & Grill, are directly imputable to Defendant Cimar Scaff and Rick Silva by virtue of their acknowledged responsibility for the operation of Silva's Brazilian Bar & Grill.

15.    Plaintiff is informed and believes, and alleges thereon that on Thursday, March 24, 2022, Defendant Cimar Scaff, as Chief Executive Officer and director/officer of Objective Enterprises and as an individual specifically identified as President/Secretary/Chief Executive Officer, officer and stockholder on the California Department of Alcoholic Beverage Control License (#593641) for Objective Enterprises had an obvious and direct financial interest in the activities of Silva's Brazilian Bar & Grill, which included the unlawful interception, receipt, and publication of Plaintiff's *Programs*.

16.    Plaintiff is informed and believes, and alleges thereon that on Thursday, March 24, 2022, Defendant Rick Silva, as Chief Financial Officer and director/officer of Objective Enterprises had an obvious and direct financial interest in the activities of Silva's Brazilian Bar & Grill, which included the unlawful interception, receipt, and publication of Plaintiff's *Programs*

17.    Plaintiff is informed and believes, and alleges thereon that the unlawful broadcast of Plaintiff's *Programs* (as more specifically defined in Paragraphs 21, 54, 87, and 120), as supervised and/or authorized by Cimar Scaff and Rick Silva  resulted in increased patronage for Silva's Brazilian Bar & Grill.

18.    On Thursday, March 24, 2022 (the date of the four soccer match *Programs* at issue herein, as more specifically defined in Paragraphs 21, 54, 87, and 120), Silva's Brazilian Bar & Grill sold food and alcoholic beverages to its patrons.

19.    Defendants advertised that the "World Cup qualifier[]" soccer matches, which included the Thursday, March 24, 2022 *Peru v. Uruguay Soccer Match, Colombia v. Bolivia Soccer Match, Paraguay v. Ecuador Soccer Match,* and *Brazil v. Chile Soccer Match* (as more specifically defined in Paragraphs 21, 54, 87, 120), would be shown at Silva's Brazilian Bar & Grill on the public Facebook and Instagram pages for Silva's Brazilian Bar & Grill.

# COUNT I

### (Violation of Title 47 U.S.C. Section 605 – *Peru v. Uruguay Program*)

20.    Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, hereby incorporates by reference all of the allegations contained in paragraphs 1-19, inclusive, as though set forth herein at length.

21.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the *Peru v. Uruguay Soccer Match* event telecast nationwide on Thursday, March 24, 2022 (this included all interviews and game commentary encompassed in the television broadcast of the event, hereinafter referred to as the "*Peru v. Uruguay Soccer Match*").

22.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the *Peru v. Uruguay Soccer Match* within their respective commercial establishments.

23.     The *Peru v. Uruguay Soccer Match* could only be exhibited in a commercial establishment in California if said establishment was contractually authorized to do so by Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media.

24.     As a commercial distributor and licensor of sporting events, including the *Program*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, expended substantial monies marketing, advertising, promoting, administering, and transmitting the *Peru v. Uruguay Soccer Match* to its customers, the aforementioned commercial entities.

25.     The *Peru v. Uruguay Soccer Match* originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-licensees.

26.     On Thursday, March 24, 2022, in violation of Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media rights and federal law, Defendants intercepted, received and published the *Peru v. Uruguay Soccer Match* at Silva's Brazilian Bar & Grill. Defendants also divulged and published said communication, or assisted or permitted in divulging and publishing said communication to patrons within Silva's Brazilian Bar & Grill.

27.     With full knowledge that the *Peru v. Uruguay Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, each and every one of the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants (as outlined above), did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the *Peru v. Uruguay Soccer Match* at the time of its transmission at their commercial establishment located at 3672 S. Bristol St., Santa Ana, CA 92704.

28.     Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition of the *Peru v. Uruguay Soccer Match* by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain.

29.     Title 47 U.S.C. § 605(a), prohibits the unauthorized interception, receipt, publication and use of communications, including satellite television signals, such as the transmission of the *Peru v. Uruguay Soccer Match* for which Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media had the distribution rights thereto.

30.     By reason of the aforesaid mentioned conduct, the aforementioned Defendants, and each of them, violated Title 47 U.S.C. Section 605, *et seq.*, either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

31.     By reason of the Defendants' violation of Title 47 U.S.C. Section 605, *et seq.*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 605.

32.     As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 605, and pursuant to said Section 605, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

      (a)    Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 605(e)(3)(C)(i)(II);

      (b)    Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605(e)(3)(C)(ii); and

      (c)    The recovery of full costs, including reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

## <u>COUNT II</u>

**(Violation of Title 47 U.S.C. Section 553 - *Peru v. Uruguay Soccer Match*)**

33.    Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-32, inclusive, as though set forth herein at length.

34.    47 U.S.C. § 553 prohibits the interception or receipt of communications offered over a cable system absent specific authorization.

35.    The unauthorized interception and receipt of the *Peru v. Uruguay Soccer Match* by the above named Defendants was prohibited by Title 47 U.S.C. §553, *et seq.*

36.    By reason of the aforesaid mentioned conduct, the aforementioned Defendants violated Title 47 U.S.C. Section 553, *et seq.* either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

367    By reason of the Defendants' violation of Title 47 U.S.C. Section 553, *et seq.,* Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 553.

38.    As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 553, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

(a)    Statutory damages for each violation in an amount to

$10,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii);

(b)    Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(B);

(c)    The recovery of full costs pursuant to Title 47 U.S.C. § 553 (c)(2)(C); and

(d)    In the discretion of this Honorable Court, reasonable attorneys' fees, pursuant to Title 47 U.S.C. § 553(c)(2)(C).

## COUNT III

### (Conversion - *Peru v. Uruguay Soccer Match*)

39.    Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-38, inclusive, as though set forth herein at length.

40.    By their aforesaid acts of interception, reception, publication, divulgence, display, and/or exhibition of the *Peru v. Uruguay Soccer Match* at their commercial establishment at the above-captioned address, the aforementioned Defendants, tortuously obtained possession of the *Peru v. Uruguay Soccer Match* and wrongfully converted same for their own use and benefit.

41.    The aforesaid acts of the Defendants were willful, malicious, egregious, and intentionally designed to harm Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, by depriving Plaintiff of the commercial license fee to which

Plaintiff was rightfully entitled to receive from them, and in doing so, the Defendants

subjected the Plaintiff to severe economic distress and great financial loss.

42.     Accordingly, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated

Sports Media, is entitled to both compensatory, as well as punitive and exemplary

damages, from aforementioned Defendants as the result of the Defendants'

egregious conduct, theft, and conversion of the *Peru v. Uruguay Soccer Match* and

deliberate injury to the Plaintiff.

## COUNT IV

**(Violation of California Business and Professions Code**

**Section 17200, *et seq*. - *Peru v. Uruguay Soccer Match*)**

43.     Plaintiff hereby incorporates by reference all of the allegations contained in

Paragraphs 1-25, inclusive, as set forth herein at length.

44.     By contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated

Sports Media, was granted exclusive domestic commercial exhibition closed-circuit

rights to the *Peru v. Uruguay Soccer Match*.

45.     Plaintiff did not authorize transmission, interception, reception, divulgence,

exhibition, or display of *Peru v. Uruguay Soccer Match* to the general public, persons

at large, or to the commercial establishment operated by the foregoing Defendants,

or any of them.

46.    With full knowledge that the *Peru v. Uruguay Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants by virtue of their respective positions and authority, did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the *Peru v. Uruguay Soccer Match* at the real time transmission of the *Peru v. Uruguay Soccer Match*'s broadcast at the commercial establishment, as more particularly indicated and identified above.

47.    Plaintiff is informed and believes and alleges thereon that the Defendants and/or their agents, servants, workmen, or employees performed the aforementioned acts knowingly, willfully and to confer a direct or indirect commercial advantage and/or private financial gain to the Defendants, to the detriment and injury of Plaintiff and its business enterprise as a commercial distributor and closed-circuit licensor of sports and entertainment television programming.

48.    The Defendants' unauthorized interception, publication, divulgence and/or exhibition was done by the Defendants wantonly, recklessly, and without regard whatsoever for the intellectual property rights of the Plaintiff.

49.    The aforementioned unlawful acts of each of the Defendants constituted unlawful, untrue, fraudulent, predatory, unfair, and deceptive trade practices, and by

reason of the aforementioned conduct, the Defendants violated California and Professions Code Section 17200, *et seq.*

50.     As a proximate result of the aforementioned acts attributable to the Defendants, Plaintiff has been permanently deprived of the patronage of current, previous and potential customers of the sports and entertainment programming it licenses commercially to the hospitality industry, all to its severe financial injury and loss in a sum to be determined at trial.

51.     By reason of the Defendants' violation of California Business and Professions Code Section 17200, *et seq.*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media is entitled to restitution for its injuries, the disgorgement and turn-over of the Defendants' ill-gotten gains, as well as injunctive and declaratory relief, as an alternative to any damages and relief that may be recoverable for Counts I-III for which there is no adequate remedy at law, from each of the aforementioned Defendants as may be made more appropriately determined at trial.

52.     Plaintiff is entitled to its attorneys' fees from the Defendants for enforcing California Business and Professions Code Section 17200 as it meets the standards of a private attorney general as specifically and statutorily defined under California Civil Procedure Section 1021.5.

## COUNT V

**(Violation of Title 47 U.S.C. Section 605 – *Colombia v. Bolivia Soccer Match*)**

53.    Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, hereby incorporates by reference all of the allegations contained in paragraphs 1-19, inclusive, as though set forth herein at length.

54.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the *Colombia v. Bolivia Soccer Match* event telecast nationwide on Thursday, March 24, 2022 (this included all interviews and game commentary encompassed in the television broadcast of the event, hereinafter referred to as the "*Colombia v. Bolivia Soccer Match*").

55.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the *Colombia v. Bolivia Soccer Match* within their respective commercial establishments.

56.    The *Colombia v. Bolivia Soccer Match* could only be exhibited in a commercial

establishment in California if said establishment was contractually authorized to do so by Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media.

57.     As a commercial distributor and licensor of sporting events, including the *Program*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, expended substantial monies marketing, advertising, promoting, administering, and transmitting the *Colombia v. Bolivia Soccer Match* to its customers, the aforementioned commercial entities.

58.     The *Colombia v. Bolivia Soccer Match* originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-licensees.

59.     On Thursday, March 24, 2022, in violation of Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media rights and federal law, Defendants intercepted, received and published the *Colombia v. Bolivia Soccer Match* at Silva's Brazilian Bar & Grill. Defendants also divulged and published said communication, or assisted or permitted in divulging and publishing said communication to patrons within Silva's Brazilian Bar & Grill.

60.     With full knowledge that the *Colombia v. Bolivia Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial

entities unauthorized to do so, each and every one of the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants (as outlined above), did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the *Colombia v. Bolivia Soccer Match* at the time of its transmission at their commercial establishment located at 3672 S. Bristol St., Santa Ana, CA 92704.

61.    Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition of the *Colombia v. Bolivia Soccer Match* by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain.

62.    Title 47 U.S.C. § 605(a), prohibits the unauthorized interception, receipt, publication and use of communications, including satellite television signals, such as the transmission of the *Colombia v. Bolivia Soccer Match* for which Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media had the distribution rights thereto.

63.    By reason of the aforesaid mentioned conduct, the aforementioned Defendants, and each of them, violated Title 47 U.S.C. Section 605, *et seq.*, either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

64.     By reason of the Defendants' violation of Title 47 U.S.C. Section 605, *et seq.*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 605.

65.     As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 605, and pursuant to said Section 605, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

      (a)    Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 605(e)(3)(C)(i)(II);

      (b)    Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605(e)(3)(C)(ii); and

      (c)    The recovery of full costs, including reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

## COUNT VI

**(Violation of Title 47 U.S.C. Section 553 - *Colombia v. Bolivia Soccer Match*)**

66.     Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-19 and 53-65, inclusive, as though set forth herein at length.

67.     47 U.S.C. § 553 prohibits the interception or receipt of communications offered over a cable system absent specific authorization.

68.     The unauthorized interception and receipt of the *Colombia v. Bolivia Soccer Match Program* by the above named Defendants was prohibited by Title 47 U.S.C. §553, *et seq.*

69.     By reason of the aforesaid mentioned conduct, the aforementioned Defendants violated Title 47 U.S.C. Section 553, *et seq.* either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

70.     By reason of the Defendants' violation of Title 47 U.S.C. Section 553, *et seq.,* Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 553.

71.     As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 553, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

(a)     Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii);

(b)     Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(B);

(c)     The recovery of full costs pursuant to Title 47 U.S.C. § 553 (c)(2)(C); and

(d)    In the discretion of this Honorable Court, reasonable attorneys' fees, pursuant to Title 47 U.S.C. § 553(c)(2)(C).

## COUNT VII

### (Conversion - *Colombia v. Bolivia Soccer Match*)

72.    Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-19 and 53-71, inclusive, as though set forth herein at length.

73.    By their aforesaid acts of interception, reception, publication, divulgence, display, and/or exhibition of the *Colombia v. Bolivia Soccer Match* at their commercial establishment at the above-captioned address, the aforementioned Defendants, tortuously obtained possession of the *Colombia v. Bolivia Soccer Match* and wrongfully converted same for their own use and benefit.

74.    The aforesaid acts of the Defendants were willful, malicious, egregious, and intentionally designed to harm Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, by depriving Plaintiff of the commercial license fee to which Plaintiff was rightfully entitled to receive from them, and in doing so, the Defendants subjected the Plaintiff to severe economic distress and great financial loss.

75.    Accordingly, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to both compensatory, as well as punitive and exemplary

damages, from aforementioned Defendants as the result of the Defendants' egregious conduct, theft, and conversion of the *Colombia v. Bolivia Soccer Match* and deliberate injury to the Plaintiff.

## COUNT VIII

### (Violation of California Business and Professions Code Section 17200, *et seq.* - *Colombia v. Bolivia Soccer Match*)

76.     Plaintiff hereby incorporates by reference all of the allegations contained in Paragraphs 1-19 and 53-58, inclusive, as set forth herein at length.

77.     By contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted exclusive domestic commercial exhibition closed-circuit rights to the *Colombia v. Bolivia Soccer Match*.

78.     Plaintiff did not authorize transmission, interception, reception, divulgence, exhibition, or display of the *Colombia v. Bolivia Soccer Match* to the general public, persons at large, or to the commercial establishment operated by the foregoing Defendants, or any of them.

79.     With full knowledge that the *Colombia v. Bolivia Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants by virtue of their respective positions and authority, did unlawfully intercept, receive,

publish, divulge, display, and/or exhibit the *Colombia v. Bolivia Soccer Match* at the

real time transmission of the *Colombia v. Bolivia Soccer Match's* broadcast at the

commercial establishment, as more particularly indicated and identified above.

80.     Plaintiff is informed and believes and alleges thereon that the Defendants

and/or their agents, servants, workmen, or employees performed the aforementioned

acts knowingly, willfully and to confer a direct or indirect commercial advantage

and/or private financial gain to the Defendants, to the detriment and injury of Plaintiff

and its business enterprise as a commercial distributor and closed-circuit licensor of

sports and entertainment television programming.

81.     The Defendants' unauthorized interception, publication, divulgence and/or

exhibition was done by the Defendants wantonly, recklessly, and without regard

whatsoever for the intellectual property rights of the Plaintiff.

82.     The aforementioned unlawful acts of each of the Defendants constituted

unlawful, untrue, fraudulent, predatory, unfair, and deceptive trade practices, and by

reason of the aforementioned conduct, the Defendants violated California and

Professions Code Section 17200, *et seq.*

83.     As a proximate result of the aforementioned acts attributable to the Defendants,

Plaintiff has been permanently deprived of the patronage of current, previous and

potential customers of the sports and entertainment programming it licenses commercially to the hospitality industry, all to its severe financial injury and loss in a sum to be determined at trial.

84.    By reason of the Defendants' violation of California Business and Professions Code Section 17200, *et seq*., Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media is entitled to restitution for its injuries, the disgorgement and turn-over of the Defendants' ill-gotten gains, as well as injunctive and declaratory relief, as an alternative to any damages and relief that may be recoverable for Counts V-VII for which there is no adequate remedy at law, from each of the aforementioned Defendants as may be made more appropriately determined at trial.

85.    Plaintiff is entitled to its attorneys' fees from the Defendants for enforcing California Business and Professions Code Section 17200 as it meets the standards of a private attorney general as specifically and statutorily defined under California Civil Procedure Section 1021.5.

## COUNT IX

**(Violation of Title 47 U.S.C. Section 605 – *Paraguay v. Ecuador Soccer Match*)**

86.    Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, hereby incorporates by reference all of the allegations contained in paragraphs 1-19, inclusive, as though set forth herein at length.

87.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the *Paraguay v. Ecuador Soccer Match* event telecast nationwide on Thursday, March 24, 2022 (this included all interviews and game commentary encompassed in the television broadcast of the event, hereinafter referred to as the "*Paraguay v. Ecuador Soccer Match*").

88.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the *Paraguay v. Ecuador Soccer Match* within their respective commercial establishments.

89.    The *Paraguay v. Ecuador Soccer Match* could only be exhibited in a commercial establishment in California if said establishment was contractually authorized to do so by Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media.

///

///

///

90.     As a commercial distributor and licensor of sporting events, including the *Program*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, expended substantial monies marketing, advertising, promoting, administering, and transmitting the *Paraguay v. Ecuador Soccer Match* to its customers, the aforementioned commercial entities.

91.     The *Paraguay v. Ecuador Soccer Match* originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-licensees.

92.     On Thursday, March 24, 2022, in violation of Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media rights and federal law, Defendants intercepted, received and published the *Paraguay v. Ecuador Soccer Match* at Silva's Brazilian Bar & Grill. Defendants also divulged and published said communication, or assisted or permitted in divulging and publishing said communication to patrons within Silva's Brazilian Bar & Grill.

93.     With full knowledge that the *Paraguay v. Ecuador Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, each and every one of the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants (as outlined above), did unlawfully intercept, receive,

publish, divulge, display, and/or exhibit the *Paraguay v. Ecuador Soccer Match* at the time of its transmission at their commercial establishment located at 3672 S. Bristol St., Santa Ana, CA 92704.

94.    Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition of the *Paraguay v. Ecuador Soccer Match* by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain.

95.    Title 47 U.S.C. § 605(a), prohibits the unauthorized interception, receipt, publication and use of communications, including satellite television signals, such as the transmission of the *Paraguay v. Ecuador Soccer Match* for which Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media had the distribution rights thereto.

96.    By reason of the aforesaid mentioned conduct, the aforementioned Defendants, and each of them, violated Title 47 U.S.C. Section 605, *et seq.*, either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

97.    By reason of the Defendants' violation of Title 47 U.S.C. Section 605, *et seq.*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 605.

98.    As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 605, and pursuant to said Section 605, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

(a)    Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 605(e)(3)(C)(i)(II);

(b)    Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605(e)(3)(C)(ii); and

(c)    The recovery of full costs, including reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

## COUNT X

**(Violation of Title 47 U.S.C. Section 553 - *Paraguay v. Ecuador Soccer Match*)**

99.    Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-19 and 86-98, inclusive, as though set forth herein at length.

100.    47 U.S.C. § 553 prohibits the interception or receipt of communications offered over a cable system absent specific authorization.

101.    The unauthorized interception and receipt of the *Paraguay v. Ecuador Soccer Match* by the above named Defendants was prohibited by Title 47 U.S.C. §553, *et seq.*

102.    By reason of the aforesaid mentioned conduct, the aforementioned Defendants violated Title 47 U.S.C. Section 553, *et seq.* either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

103.    By reason of the Defendants' violation of Title 47 U.S.C. Section 553, *et seq.,* Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 553.

104.    As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 553, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

(a)    Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii);

(b)    Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(B);

(c)    The recovery of full costs pursuant to Title 47 U.S.C. § 553 (c)(2)(C); and

(d)    In the discretion of this Honorable Court, reasonable attorneys' fees, pursuant to Title 47 U.S.C. § 553(c)(2)(C).

## COUNT XI

### (Conversion - *Paraguay v. Ecuador Soccer Match*)

105.   Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-19 and 86-104, inclusive, as though set forth herein at length.

106.   By their aforesaid acts of interception, reception, publication, divulgence, display, and/or exhibition of the *Paraguay v. Ecuador Soccer Match* at their commercial establishment at the above-captioned address, the aforementioned Defendants, tortuously obtained possession of the *Paraguay v. Ecuador Soccer Match* and wrongfully converted same for their own use and benefit.

107.   The aforesaid acts of the Defendants were willful, malicious, egregious, and intentionally designed to harm Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, by depriving Plaintiff of the commercial license fee to which Plaintiff was rightfully entitled to receive from them, and in doing so, the Defendants subjected the Plaintiff to severe economic distress and great financial loss.

108.   Accordingly, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to both compensatory, as well as punitive and exemplary damages, from aforementioned Defendants as the result of the Defendants'

egregious conduct, theft, and conversion of the *Paraguay v. Ecuador Soccer Match* and deliberate injury to the Plaintiff.

## COUNT XII

**(Violation of California Business and Professions Code**

**Section 17200, *et seq. - Paraguay v. Ecuador Soccer Match*)**

109.    Plaintiff hereby incorporates by reference all of the allegations contained in Paragraphs 1-19 and 86-91, inclusive, as set forth herein at length.

110.    By contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted exclusive domestic commercial exhibition closed-circuit rights to the *Paraguay v. Ecuador Soccer Match*.

111.    Plaintiff did not authorize transmission, interception, reception, divulgence, exhibition, or display of the *Paraguay v. Ecuador Soccer Match* to the general public, persons at large, or to the commercial establishment operated by the foregoing Defendants, or any of them.

112.    With full knowledge that the *Paraguay v. Ecuador Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants by virtue of their respective positions and authority, did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the *Paraguay v. Ecuador Soccer Match* at the

real time transmission of the *Paraguay v. Ecuador Soccer Match's* broadcast at the commercial establishment, as more particularly indicated and identified above.

113.    Plaintiff is informed and believes and alleges thereon that the Defendants and/or their agents, servants, workmen, or employees performed the aforementioned acts knowingly, willfully and to confer a direct or indirect commercial advantage and/or private financial gain to the Defendants, to the detriment and injury of Plaintiff and its business enterprise as a commercial distributor and closed-circuit licensor of sports and entertainment television programming.

114.    The Defendants' unauthorized interception, publication, divulgence and/or exhibition was done by the Defendants wantonly, recklessly, and without regard whatsoever for the intellectual property rights of the Plaintiff.

115.    The aforementioned unlawful acts of each of the Defendants constituted unlawful, untrue, fraudulent, predatory, unfair, and deceptive trade practices, and by reason of the aforementioned conduct, the Defendants violated California and Professions Code Section 17200, *et seq.*

116.    As a proximate result of the aforementioned acts attributable to the Defendants, Plaintiff has been permanently deprived of the patronage of current, previous and potential customers of the sports and entertainment programming it licenses

commercially to the hospitality industry, all to its severe financial injury and loss in a sum to be determined at trial.

117.   By reason of the Defendants' violation of California Business and Professions Code Section 17200, *et seq*., Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media is entitled to restitution for its injuries, the disgorgement and turn-over of the Defendants' ill-gotten gains, as well as injunctive and declaratory relief, as an alternative to any damages and relief that may be recoverable for Counts IX-XI for which there is no adequate remedy at law, from each of the aforementioned Defendants as may be made more appropriately determined at trial.

118.   Plaintiff is entitled to its attorneys' fees from the Defendants for enforcing California Business and Professions Code Section 17200 as it meets the standards of a private attorney general as specifically and statutorily defined under California Civil Procedure Section 1021.5.

## COUNT XIII

**(Violation of Title 47 U.S.C. Section 605 – *Brazil v. Chile Soccer Match*)**

119.   Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, hereby incorporates by reference all of the allegations contained in paragraphs 1-19, inclusive, as though set forth herein at length.

120.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the *Brazil v. Chile Soccer Match* event telecast nationwide on Thursday, March 24, 2022 (this included all interviews and game commentary encompassed in the television broadcast of the event, hereinafter referred to as the "*Brazil v. Chile Soccer Match*").

121.    Pursuant to contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the *Brazil v. Chile Soccer Match* within their respective commercial establishments.

122.    The *Brazil v. Chile Soccer Match* could only be exhibited in a commercial establishment in California if said establishment was contractually authorized to do so by Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media.

123.    As a commercial distributor and licensor of sporting events, including the *Program*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, expended substantial monies marketing, advertising, promoting,

administering, and transmitting the *Brazil v. Chile Soccer Match* to its customers, the aforementioned commercial entities.

124.    The *Brazil v. Chile Soccer Match* originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal to Plaintiff's lawful sub-licensees.

125.    On Thursday, March 24, 2022, in violation of Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media rights and federal law, Defendants intercepted, received and published the *Brazil v. Chile Soccer Match* at Silva's Brazilian Bar & Grill. Defendants also divulged and published said communication, or assisted or permitted in divulging and publishing said communication to patrons within Silva's Brazilian Bar & Grill.

126.    With full knowledge that the *Brazil v. Chile Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, each and every one of the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants (as outlined above), did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the *Brazil v. Chile Soccer Match* at the time of its transmission at their commercial establishment located at 3672 S. Bristol St., Santa Ana, CA 92704.

127.    Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition of the *Brazil v. Chile Soccer Match* by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain.

128.    Title 47 U.S.C. § 605(a), prohibits the unauthorized interception, receipt, publication and use of communications, including satellite television signals, such as the transmission of the *Brazil v. Chile Soccer Match* for which Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media had the distribution rights thereto.

129.    By reason of the aforesaid mentioned conduct, the aforementioned Defendants, and each of them, violated Title 47 U.S.C. Section 605, *et seq.*, either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

130.    By reason of the Defendants' violation of Title 47 U.S.C. Section 605, *et seq.*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 605.

131.    As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 605, and pursuant to said Section 605, Plaintiff Innovative Sports

Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

      (a)   Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 605(e)(3)(C)(i)(II);

      (b)   Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605(e)(3)(C)(ii); and

      (c)   The recovery of full costs, including reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

## <u>COUNT XIV</u>

### (Violation of Title 47 U.S.C. Section 553 - *Brazil v. Chile Soccer Match*)

132.   Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-19 and 119-131, inclusive, as though set forth herein at length.

133.   47 U.S.C. § 553 prohibits the interception or receipt of communications offered over a cable system absent specific authorization.

134.   The unauthorized interception and receipt of the *Brazil v. Chile Soccer Match* by the above named Defendants was prohibited by Title 47 U.S.C. §553, *et seq.*

135.   By reason of the aforesaid mentioned conduct, the aforementioned Defendants violated Title 47 U.S.C. Section 553, *et seq.* either directly or, in the case of Defendants Cimar Scaff and Rick Silva, contributorily or vicariously.

136.   By reason of the Defendants' violation of Title 47 U.S.C. Section 553, *et seq.,* Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, has the private right of action pursuant to Title 47 U.S.C. Section 553.

137.   As the result of the aforementioned Defendants' violation of Title 47 U.S.C. Section 553, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to the following from each Defendant:

(a)   Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii);

(b)   Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(B);

(c)   The recovery of full costs pursuant to Title 47 U.S.C. § 553 (c)(2)(C); and

(d)   In the discretion of this Honorable Court, reasonable attorneys' fees, pursuant to Title 47 U.S.C. § 553(c)(2)(C).

**<u>COUNT XV</u>**

**(Conversion - *Brazil v. Chile Soccer Match*)**

138.   Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs 1-19 and 119-137, inclusive, as though set forth herein at length.

139.   By their aforesaid acts of interception, reception, publication, divulgence, display, and/or exhibition of the *Brazil v. Chile Soccer Match* at their commercial

establishment at the above-captioned address, the aforementioned Defendants, tortuously obtained possession of the *Brazil v. Chile Soccer Match* and wrongfully converted same for their own use and benefit.

140.    The aforesaid acts of the Defendants were willful, malicious, egregious, and intentionally designed to harm Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, by depriving Plaintiff of the commercial license fee to which Plaintiff was rightfully entitled to receive from them, and in doing so, the Defendants subjected the Plaintiff to severe economic distress and great financial loss.

141.    Accordingly, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, is entitled to both compensatory, as well as punitive and exemplary damages, from aforementioned Defendants as the result of the Defendants' egregious conduct, theft, and conversion of the *Brazil v. Chile Soccer Match* and deliberate injury to the Plaintiff.

## COUNT XVI

### (Violation of California Business and Professions Code

### Section 17200, *et seq*. - *Brazil v. Chile Soccer Match*)

142.    Plaintiff hereby incorporates by reference all of the allegations contained in Paragraphs 1-19 and 119-124, inclusive, as set forth herein at length.

143.    By contract, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media, was granted exclusive domestic commercial exhibition closed-circuit rights to the *Brazil v. Chile Soccer Match.*

144.    Plaintiff did not authorize transmission, interception, reception, divulgence, exhibition, or display of the *Brazil v. Chile Soccer Match* to the general public, persons at large, or to the commercial establishment operated by the foregoing Defendants, or any of them.

145.    With full knowledge that the *Brazil v. Chile Soccer Match* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants by virtue of their respective positions and authority, did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the *Brazil v. Chile Soccer Match* at the real time transmission of the *Brazil v. Chile Soccer Match's* broadcast at the commercial establishment, as more particularly indicated and identified above.

146.    Plaintiff is informed and believes and alleges thereon that the Defendants and/or their agents, servants, workmen, or employees performed the aforementioned acts knowingly, willfully and to confer a direct or indirect commercial advantage and/or private financial gain to the Defendants, to the detriment and injury of Plaintiff

and its business enterprise as a commercial distributor and closed-circuit licensor of sports and entertainment television programming.

147.   The Defendants' unauthorized interception, publication, divulgence and/or exhibition was done by the Defendants wantonly, recklessly, and without regard whatsoever for the intellectual property rights of the Plaintiff.

148.   The aforementioned unlawful acts of each of the Defendants constituted unlawful, untrue, fraudulent, predatory, unfair, and deceptive trade practices, and by reason of the aforementioned conduct, the Defendants violated California and Professions Code Section 17200, *et seq.*

149.   As a proximate result of the aforementioned acts attributable to the Defendants, Plaintiff has been permanently deprived of the patronage of current, previous and potential customers of the sports and entertainment programming it licenses commercially to the hospitality industry, all to its severe financial injury and loss in a sum to be determined at trial.

150.   By reason of the Defendants' violation of California Business and Professions Code Section 17200, *et seq.*, Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media is entitled to restitution for its injuries, the disgorgement and turn-over of the Defendants' ill-gotten gains, as well as injunctive and declaratory

relief, as an alternative to any damages and relief that may be recoverable for Counts XII-XVI for which there is no adequate remedy at law, from each of the aforementioned Defendants as may be made more appropriately determined at trial.

151.    Plaintiff is entitled to its attorneys' fees from the Defendants for enforcing California Business and Professions Code Section 17200 as it meets the standards of a private attorney general as specifically and statutorily defined under California Civil Procedure Section 1021.5.

**WHEREFORE, Plaintiff prays for judgment as set forth below.**

**As to the First Count:**

1.    For statutory damages in the amount of $110,000.00 against the Defendants, and each of them;

2.    For reasonable attorneys' fees as mandated by statute;

3.    For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

4.    For such other and further relief as this Honorable Court may deem just and proper.

**As to the Second Count:**

1.    For statutory damages in the amount of $60,000.00 against the Defendants, and each of them;

2.   For reasonable attorneys' fees as may be awarded in the Court's

discretion pursuant to statute;

3.   For all costs of suit, including, but not limited to, filing fees, service

of process fees, investigative costs; and

4.    For such other and further relief as this Honorable Court may deem just

and proper.

**As to the Third Count:**

1.    For compensatory damages in an amount according to proof against the

Defendants, and  each of them;

2.    For exemplary damages against the Defendants, and each of them;

3.    For punitive damages against the Defendants, and each of them;

4.    For reasonable attorneys' fees as may be awarded in the Court's

discretion pursuant to statute;

5.    For all costs of suit, including, but not limited to, filing fees, service of

process fee, investigative costs; and

6.    For such other and further relief as this Honorable Court may deem just

and proper.

**As to the Fourth Count:**

1.    For restitution to the Plaintiff in an amount according to and from the

Defendants, for their ill-gotten gains;

2.    For declaratory relief;

3.      For prohibitory and mandatory injunctive relief;

4.      For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.       For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

6.      For such other and further relief as this Honorable Court may deem just and proper.

**As to the Fifth Count:**

1.      For statutory damages in the amount of $110,000.00 against the Defendants, and each of them;

2.      For reasonable attorneys' fees as mandated by statute;

3.      For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

4.      For such other and further relief as this Honorable Court may deem just and proper.

**As to the Sixth Count:**

1.      For statutory damages in the amount of $60,000.00 against the Defendants, and each of them;

2.      For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

3.      For all costs of suit, including, but not limited to, filing fees, service

of process fees, investigative costs; and

4.  For such other and further relief as this Honorable Court may deem just and proper.

**As to the Seventh Count:**

1.  For compensatory damages in an amount according to proof against the Defendants, and each of them;

2.  For exemplary damages against the Defendants, and each of them;

3.  For punitive damages against the Defendants, and each of them;

4.  For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.  For all costs of suit, including, but not limited to, filing fees, service of process fee, investigative costs; and

6.  For such other and further relief as this Honorable Court may deem just and proper.

**As to the Eighth Count:**

1.  For restitution to the Plaintiff in an amount according to and from the Defendants, for their ill-gotten gains;

2.  For declaratory relief;

3.  For prohibitory and mandatory injunctive relief;

4.  For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.      For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

6.      For such other and further relief as this Honorable Court may deem just and proper.

**As to the Ninth Count:**

1.      For statutory damages in the amount of $110,000.00 against the Defendants, and each of them;

2.      For reasonable attorneys' fees as mandated by statute;

3.      For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

4.      For such other and further relief as this Honorable Court may deem just and proper.

**As to the Tenth Count:**

1.      For statutory damages in the amount of $60,000.00 against the Defendants, and each of them;

2.      For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

3.      For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

4.      For such other and further relief as this Honorable Court may deem just and proper.

**As to the Eleventh Count:**

1.    For compensatory damages in an amount according to proof against the Defendants, and  each of them;

2.    For exemplary damages against the Defendants, and each of them;

3.    For punitive damages against the Defendants, and each of them;

4.    For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.    For all costs of suit, including, but not limited to, filing fees, service of process fee, investigative costs; and

6.    For such other and further relief as this Honorable Court may deem just and proper.

**As to the Twelfth Count:**

1.    For restitution to the Plaintiff in an amount according to and from the Defendants, for their ill-gotten gains;

2.    For declaratory relief;

3.    For prohibitory and mandatory injunctive relief;

4.    For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.     For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

6.     For such other and further relief as this Honorable Court may deem just
and proper.

**As to the Thirteenth Count:**

1.     For statutory damages in the amount of $110,000.00 against the
Defendants, and each of them;

2.     For reasonable attorneys' fees as mandated by statute;

3.     For all costs of suit, including, but not limited to, filing fees, service of
process fees, investigative costs; and

4.     For such other and further relief as this Honorable Court may deem just
and proper.

**As to the Fourteenth Count:**

1.   For statutory damages in the amount of $60,000.00 against the
Defendants, and each of them;

2.   For reasonable attorneys' fees as may be awarded in the Court's
discretion pursuant to statute;

3.   For all costs of suit, including, but not limited to, filing fees, service
of process fees, investigative costs; and

4.    For such other and further relief as this Honorable Court may deem just
and proper.

**As to the Fifteenth Count:**

1.      For compensatory damages in an amount according to proof against the Defendants, and  each of them;

2.      For exemplary damages against the Defendants, and each of them;

3.      For punitive damages against the Defendants, and each of them;

4.      For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.      For all costs of suit, including, but not limited to, filing fees, service of process fee, investigative costs; and

6.      For such other and further relief as this Honorable Court may deem just and proper.

**As to the Sixteenth Count:**

1.      For restitution to the Plaintiff in an amount according to and from the Defendants, for their ill-gotten gains;

2.      For declaratory relief;

3.      For prohibitory and mandatory injunctive relief;

4.      For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

5.       For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

6.      For such other and further relief as this Honorable Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Date: February 20, 2023

*/s/ Thomas P. Riley*

**LAW OFFICES OF THOMAS P. RILEY, P.C.**

By: Thomas P. Riley
Innovative Sports Management, Inc.,
d/b/a Integrated Sports Media